UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DUNSTER LIVE, LLC, individually and derivatively on behalf of LONESTAR LOGOS & SIGNS, LLC, <br><br> *Plaintiff*, <br><br> vs. <br><br> LONESTAR LOGOS MANAGEMENT COMPANY, LLC individually and d/b/a LONESTAR MEDIA GROUP; *et al.*, <br><br> *Defendants*, <br><br> and <br><br> LONESTAR LOGOS & SIGNS, LLC, <br><br> *Nominal Defendant.* | § § § § § § § § § § § § § § § § § § § § § <br> CIVIL NO. 1:16-cv-968-LY |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND/OR SANCTIONS**

Plaintiff Dunster Live, LLC filed this case after learning that its business partners in LoneStar Logos & Signs, LLC ("LoneStar") had conspired to form a new company with the same name and, through artifice and deceit, acquire LoneStar's assets and a lucrative contract with TxDOT without Dunster's knowledge or participation. Dunster alleged that Defendants used LoneStar's information, name, and assets—including its employees, financial information, software, and data—as their own. Defendants submitted a proposal to TxDOT on behalf of the new "LoneStar Management" by representing that it was the same company that TxDOT had been working with for years.

1

After discovering the extent of Defendants' misconduct through a combination of books and records and public information requests, Dunster filed this lawsuit. Because of Defendants' past and present plan to strip LoneStar of its assets, including its trade secrets, and to use them for their own benefit to acquire and fulfill the TxDOT contract beginning on January 1, 2017, Dunster sought a preliminary injunction.

Following expedited discovery and an evidentiary hearing, the Court denied Dunster's motion for preliminary injunction. The Court emphasized that a preliminary injunction under federal law is an extraordinary remedy and that it was not judging the merits of the case. Rather, the Court ruled, in relevant part:

> [T]he true gravamen of the complaint here is the value of the interest, the 30 percent interest, that has been lost to Dunster in this case which will again be taken up on the merits of this case.
>
> In any event, the court finds the extraordinary remedy of preliminary injunction is not justified here because all of the matters that have been discussed with me in this court the last two days are capable, in my opinion, of discernment and being valued as a dollar amount. And the plaintiff, if the plaintiff is correct, may recover the dollar amount it has been harmed through the actions of the defendants if the plaintiff can so prove them.

(Dec. 20, 2016 Tr. at 38:22-39:9, 44:1-7.)

Shortly after the Court's denial of the preliminary injunction, Dunster voluntarily dismissed its claim under the federal Defend Trade Secrets Act (DTSA). Because only the DTSA claim provided this Court with subject-matter jurisdiction, Dunster asked the Court to dismiss the case without prejudice. In response to Dunster's request, Defendants sought to assert a cause of action for its attorneys' fees. The Court rejected Defendants' request, recognizing that an attorneys' fee claim is not a substantive cause of action, and granted Dunster's motion to dismiss without prejudice.

Defendants now ask the Court, again, to award attorneys' fees—this time in a post-judgment motion under the DTSA's fee-shifting provision and Rule 11 of the Federal Rules of Civil Procedure. Defendants declare victory and—in the face of the record presented to the Court—maintain that Dunster's claims relating to fiduciary duties, trade secrets, and a 30% interest in a company of LoneStar's value were merely a "shakedown." Defendants' motion is heavy on rhetoric but light on law, and it appears to have been written as a self-congratulatory editorial with no regard for procedure or the proper legal standard.

The Court should deny Defendants' motion because it is procedurally improper and fails on the merits. *First*, the Court lacks jurisdiction to award fees under the DTSA because Dunster voluntarily dismissed that claim, divesting the Court of subject-matter jurisdiction. *Second*, despite their premature celebration, Defendants did not prevail on the merits of any of Dunster's claims, as the Court dismissed this suit without prejudice after Dunster chose not to proceed with its DTSA claim. *Third*, even if the Court were to reach the substance of Defendants' motion, extensive evidence supported Dunster's claims—regardless of whether the Court granted the extraordinary remedy of a preliminary injunction. Dunster expects to present that evidence to a jury. There is no basis for Defendants' requested relief.

## ARGUMENT

**I.   Defendants' request for sanctions and attorneys' fees is procedurally improper.**

Defendants seek attorneys' fees under the fee-shifting provision of the DTSA and Rule 11. The Court need not reach the merits of Defendants' motion because (a) it lacks

3

subject-matter jurisdiction to consider the DTSA request; and (b) the Rule 11 motion is procedurally improper.

### A. The Court lacks jurisdiction to enter an award of attorneys' fees under the DTSA.

The only claim in this case that gave rise to this Court's subject-matter jurisdiction was Dunster's claim under the DTSA. There were no other federal claims and no diversity, and, thus, no other basis for federal jurisdiction in the case. When Dunster voluntarily dismissed its DTSA claim, it divested this Court of jurisdiction under well-established Supreme Court and Fifth Circuit authority. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985).

Although Rule 54 provides a procedure for the Court to award attorneys' fees after entry of *judgment*, that procedure presumes the existence of subject-matter jurisdiction. Where a district court lacks subject-matter jurisdiction over the substantive claims at issue, it also lacks jurisdiction to award attorneys' fees. *See Cliburn v. Police Jury Ass'n of La., Inc.*, 165 F.3d 315, 316 (5th Cir. 1999) ("Given that the district court lacked jurisdiction to hear Cliburn's claims under ERISA, it logically follows that the court lacked jurisdiction to entertain the Police Jury Association's request for fees, costs, and expenses under ERISA."). Thus, the Court need not reach the merits of Defendants' motion because it lacks subject-matter jurisdiction.

4

B.     **Defendants failed to follow the required procedure under Rule 11.**

Whether due to the jurisdictional problem with their request for attorneys' fees under the DTSA or as a sheer intimidation tactic, Defendants also request attorneys' fees pursuant to Federal Rule of Civil Procedure 11. This request fails, first, because Defendants did not even follow the procedural requirements of Rule 11.

Rule 11 imposes the following procedural requirements:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2). "Thus, Rule 11(c)(2) creates a period of 'safe harbor' whereby parties can avoid sanctions by withdrawing or correcting the challenged document or position after receiving the motion for sanctions." *Margetis v. Furgeson*, 666 F. App'x 328, 331 (5th Cir. 2016). Additionally, "[b]ecause this period of 'safe harbor' is dependent on the ability to withdraw or correct the challenged document or contention, it follows that 'a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).'" *Id.* at 331-32 (citing Fed. R. Civ. P. 11(c) advisory committee's note to 1993 amendment).[1] These procedural requirements are "strictly construed and substantial compliance is insufficient." *Bell v. Dunn, Johnston & Brown*, C.A. No. 3:10-CV-1-M, 2011 WL 759473, at *4 (N.D. Tex. Feb. 7, 2011) (citing *In re Pratt*, 524 F.3d 580, 586-88 (5th Cir. 2008)).

---

[1] Although the Supreme Court has previously permitted parties to file Rule 11 motions after dismissal, that case law predates the 1993 amendment to Rule 11 adding the "safe harbor" provision. *De La Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 257 n.4 (S.D.N.Y. 2003). "Thus, a court can no longer issue Rule 11 sanctions in a case where . . . a complaint was voluntarily dismissed within 21 days of a request for Rule 11 sanctions." *Id.*

5

Here, Defendants failed all of the procedural requirements of Rule 11. They filed their Rule 11 motion within another document, failed to serve the motion 21 days prior to filing, and filed the motion after Dunster's voluntary dismissal. Under established Fifth Circuit case law, Defendants' Rule 11 motion is procedurally improper and must be denied. *See Tompkins v. Cyr*, 202 F.3d 770, 778 (5th Cir. 2000) (holding that denial of a Rule 11 motion is proper where the movant fails to comply with Rule 11's notice and service requirements).

## II. Defendants' motion fails on the merits.

Even if the Court proceeds to the substance of Defendants' motion, denial of the motion is required because Dunster asserted valid claims based on Defendants' tortious conduct. The Court never addressed the merits of Dunster's claims at the preliminary injunction stage, even though Defendants appear to believe they obtained a final judgment.

### A. Neither the Court's preliminary injunction ruling nor Dunster's voluntary dismissal entitle Defendants to an award of attorneys' fees or sanctions.

Defendants suggest in their motion that the Court's order denying Dunster the extraordinary remedy of a preliminary injunction somehow establishes that Defendants prevailed on the merits or that Dunster's claims were meritless. But the denial of a preliminary injunction is not an adjudication on the merits, and nothing at the hearing conclusively disproved Dunster's claims in this case. "A 'preliminary injunction [is] by its very nature interlocutory, tentative, and impermanent.'" *Texas v. United States*, C.A. No. 7:15-CV-00056-O, 2016 WL 36336072, at *2 (N.D. Tex. Feb. 2, 2016) (citing *Madison Square Garden Boxing, Inc. v. Shavers*, 562 F.2d 141, 144 (2d Cir. 1977)).

Thus, the results of a hearing on a preliminary injunction do not entitle a party to attorneys' fees as a "prevailing party." *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 480 F.3d 734, 741-42 (5th Cir. 2007).

Throughout its motion, Defendants refer to "conclusive" evidence and to purported findings by the Court that Dunster failed to show a misappropriation of trade secrets or a breach of fiduciary duty. Defendants' arguments mischaracterize the Court's December 20, 2016 ruling from the bench, which did not render any "conclusive" or "final" judgments on the merits of Dunster's claims. In fact, the Court emphasized multiple times that it was not reaching the merits of the case. For example, the Court stated:

> There may or may not have been a conflict of interest in the managers who held 70 percent of the stock -- or the ownership of the company. How strong section 507 of the contract is, is a question for another day. In other words, I say again: *The Court is not going to determine the merits of this case or consider what we've done the last two days or consider the materials the court has gone through that it has considered as a mini-trial in this case.*

(Dec. 20, 2016 Tr. at 39:18-25 (emphasis added); *accord id.* at 38:22-39:9 (explaining that the Court is not "judging the merits of the case" and noting that "this case may be decided in favor of one of those sides or the other").)

Moreover, Dunster's decision to voluntarily dismiss its federal trade secrets claim without prejudice, which deprived the Court of subject-matter jurisdiction, does not mean that Dunster's claims are objectively meritless. Indeed, Defendants have not been awarded any relief or obtained any change in the parties' status by virtue of Dunster's voluntary dismissal. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 603, 605 (2001). Additionally, Rule 54(d)(1), which

7

provides the procedural basis for the post-judgment award of attorneys' fees Defendants seek, imposes a "prevailing party" standard, which requires a dismissal *with prejudice*. *See United States v. $13,275.21, More or Less, in U.S. Currency*, C.A. No. SA-06-171-XR, 2007 WL 316455, at *2 n.1 (W.D. Tex. Jan. 31, 2007) ("This Court could not locate one Fifth Circuit case holding that dismissal without prejudice pursuant to Rule 41(a)(2) entitles a party to costs under the 'prevailing party' standard of Rule 54(d)(1)."); *accord United States v. Minh Huynh*, 334 F. App'x 636, 639 (5th Cir. 2009).  Courts consistently reject requests for attorneys' fees in similar situations involving voluntary dismissal without prejudice.  *See, e.g.*, *Vanguard Envt'l, Inc. v. Kerin*, 528 F.3d 756, 758-59 (10th Cir. 2008) (rejecting request for attorneys' fees under Oklahoma Trade Secrets Act in case where plaintiff voluntarily dismissed its claims); *Lightsource Analytics, LLC v. Great Stuff, Inc.*, No. A-13-CV-931 LY, 2014 WL 4744789, at *5 (W.D. Tex. Sept. 23, 2014) (recommending denial of motion for attorneys' fees under the Copyright Act after voluntary dismissal because "Defendants have not been awarded any relief by the Court and there has not been a judicially sanctioned change in the legal relationship of the parties").

> **B.** **The evidence establishes that Dunster's claims are viable and objectively reasonable.**

Although Dunster need not demonstrate the validity of its claims after the case was dismissed without prejudice, the evidence Dunster collected in discovery and presented to the Court establishes viable causes of action for misappropriation of trade secrets and breach of fiduciary duty, among others, against Defendants.  For example:

- Defendant Vince Hazen had "no small measure of disdain for Dunster's very existence within LoneStar." (Dec. 19, 2016 Tr. at 207:13-15.) Hazen

8

and the other Defendants hatched a plan to effectively expel Dunster for no payment while increasing their own personal stakes in their new venture, LoneStar Management. (Dec. 19, 2016 Tr. at 209:10-18.)

- As part of their plan, Defendants formed LoneStar Management in 2013 for the purpose of "bidding on the future TxDOT Logo RFP" without Dunster. (PX-28, PX-30.) Defendants then entered into a "Side Agreement" to work together to bid on a new TxDOT RFP and not to work with any other individual or entity (including Dunster). (PX-11, § 1.) Defendants also agreed to keep their scheme confidential. (PX-47, § 12.10.)

- On the day LoneStar Management was formed, Hazen, writing on behalf of LoneStar and as LoneStar's COO and General Counsel, purported to grant permission to LoneStar Management to use the name "LoneStar Logos Management Company, LLC" and waive any objection LoneStar would have to the use of the name. (PX-30.) Of course, neither Hazen nor any of the other Defendants informed Dunster that LoneStar Management had been formed or that LoneStar was waiving any objection to the use of its name. (M. Johnston Dep. at 127:17-21.)

- Dunster repeatedly sought information from Defendants about LoneStar continuing with the TxDOT contract or bidding on a new contract. (PX-9, PX-12, PX-19, PX-40, PX-41, PX-42, PX-43, PX-44.) Defendants ignored Dunster's requests for information, with Hazen on one occasion instructing Defendant Curtis Ford to respond to Dunster by "tell[ing] them to go to hell." (PX-13.) Defendants also claimed on several occasions not to have any information about the new TxDOT RFP, despite that Defendants were, in fact, putting together their own proposal to TxDOT without Dunster. (PX-19, PX-20, PX-40, PX-60.)

- Defendant Matt Johnston received notice of the issuance of a new RFP directly from TxDOT as the President of LoneStar, but he did not forward the RFP to Dunster or inform Dunster about the issuance of the RFP. (PX-48; M. Johnston Dep. at 196:6-13.) In fact, Johnston ignored Dunster's inquiries about the RFP and waited until September 22 to inform Dunster that the RFP had been issued. (PX-41, PX-42, PX-43, PX-44, PX-45.)

- While Defendants were ignoring Dunster's requests for information, they were putting together their own bid for the new TxDOT contract. In their bid, they represented to TxDOT that the new LoneStar Management was the same as the "old" LoneStar. (PX-18.) Defendants used the "old" LoneStar's logo and told TxDOT that the same vendor would continue servicing the new contract with the same employees, management, and assets. (*Id.*) Of course, this was not accurate, as LoneStar Management was a new company.

9

- Defendants told TxDOT in their proposal that LoneStar's software and database were proprietary and valuable. (PX-18, §§ 3, 8.) In fact, Defendants told TxDOT that the software and database were valued at $28 million. (PX-23, Attachment E.)

- Defendants began transferring this proprietary information, among other information, from LoneStar to LoneStar Management in July 2016, when a consultant working for Defendants reported that she had "copied backups of your databases (Dynamics, LLS [LoneStar Logos], and LHS [Longhorn Signs])" and planned to load the copied databases into "an empty company database called Lonestar Logos Management Company." (PX-31.) Hazen acknowledged that LoneStar Management also copied LoneStar's software and that Defendants planned to transfer the LoneStar database and website to LoneStar Management and to move all of LoneStar's employees to LoneStar Management before ultimately shutting LoneStar down. (Dec. 19, 2016 Tr. at 201:23:202:8, 204:23-205:20.)

This is just a small sampling of the evidence that supported Dunster's claims—and the Court can take notice of the evidence submitted with the substantial briefing, appendices, and exhibits tendered before and during the hearing itself. That record contains ample proof that Defendants misappropriated trade secrets, breached their fiduciary duties, and participated in a civil conspiracy, and a jury will ultimately decide the case on the merits.

Defendants contended throughout the proceedings that LoneStar's database is not a trade secret because it was shared with TxDOT. But as Dunster repeatedly briefed the Court and argued, "[p]roviding trade secret information to a government body as required by it does not waive a company's trade secret protection." *Waste Mgmt. of Tex., Inc. v. Abbott*, 406 S.W.3d 626, 636 (Tex. App.—Eastland 2013, pet. denied) (citing *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1124 (5th Cir. 1991)). Defendants' statements in LoneStar Management's proposal to TxDOT illustrate that Defendants themselves contended the LoneStar software and database were proprietary trade secrets *until they changed their tune to avoid liability in this litigation*:

10

- "One of the main things that separates LoneStar Logos from all other companies is our *proprietary* software and the incredibly detailed and comprehensive database that it has enabled [LoneStar] to create." (PX-18, § 8 (emphasis added).)

- "We invested significant money and time to develop our *proprietary software and database*." (PX-18, § 3 (emphasis added).)

Defendants also contend that Dunster's trade secrets and conspiracy claims fail because LoneStar Management paid fair market value for the assets it took from LoneStar. But as Hazen testified at the hearing, LoneStar Management determined that $367,000 was "fair market value" for LoneStar's assets. (Dec. 19, 2016 Tr. at 204:13-22.) The Court should reject Defendants' contention that LoneStar Management's payment of less than $400,000 for assets that Defendants themselves valued at more than $25 million conclusively disproves Dunster's claims.

Defendants further argue that Dunster's fiduciary duty claim is meritless due to a purported disclaimer in the LoneStar Company Agreement. Contrary to Defendants' interpretation, however, Section 5.07 of the Company Agreement does not disclaim any fiduciary duties—let alone all of them. Indeed, this clause makes no mention of fiduciary duties or the express intent to alter or disclaim such duties, as the law requires. *See, e.g.*, *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997) (stating that contractual disclaimers must be "clear and specific"); *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 664 (Del. Ch. 2012) ("Drafters of an LLC agreement must make their intent to eliminate fiduciary duties plain and unambiguous.").

The Court recognized the contested issues surrounding this clause at the preliminary injunction, stating, "How strong section 507 of the contract is, is a question for another day." (Dec. 20, 2016 Tr. at 39:18-25.) And even if Defendants'

11

interpretation of Section 5.07 were correct, compliance with the contractual terms of the "conflict of interest" provision would not, in itself, absolve Defendants of any breach of fiduciary duty. As Texas courts have explained, "contracts do not exist in a vacuum. Rather, contractual rights . . . do not operate to the exclusion of fiduciary duties. Instead, where the two overlap, *contractual rights must be exercised in a manner consistent with fiduciary duties*." *CBIF LP v. TGI Friday's Inc.*, No. 05–15–00157–CV, 2016 WL 7163849, at *13 (Tex. App.—Dallas Dec. 5, 2016, no pet. h.) (citations omitted and emphasis added).

Defendants also contend that Dunster's derivative claims are meritless because of Dunster's purported lack of standing. Defendants ignore the fact that the procedural standing requirements for derivative actions involving LLCs do not apply to closely held businesses such as LoneStar. Tex. Bus. Org. Code § 101.463(b). Further, Defendants' standing argument is based on their purported redemption of Dunster's membership interest—after this litigation began and as part of a further attempt to oust Dunster from its ownership interest—which Dunster contends was ineffective under Texas law and the Revised Company Agreement. *See Stretcher v. Gregg*, 542 S.W.2d 954, 958 (Tex. Civ. App.—Texarkana 1976, no writ) (explaining that Texas law does "not favor forfeitures, and unless compelled to do so by the plain language of the contract, a forfeiture will not be enforced" and that forfeitures "must be exercised in strict compliance with [their] terms"). Dunster contested the purported redemption and sought a judicial declaration in this very case that Defendants' attempt to redeem a 30% interest in LoneStar for zero dollars was not effective. The fact that Defendants now claim victory on an issue that

was neither addressed nor decided by the Court as part of the preliminary injunction proceeding speaks volumes about the quality and veracity of their motion.

Nor is there any support for Defendants' claim that Dunster brought this lawsuit in bad faith—other than Defendants' own bald assertions. As the above evidence demonstrates, Defendants engaged in unlawful actions, and Dunster brought this lawsuit to protect its rights and recover for the injury Defendants caused. Defendants rely on testimony from Kevin Lippincott, one of Dunster's members, regarding his understanding of whether LoneStar's employees would be out of jobs as somehow showing Dunster's bad faith. As the quoted testimony demonstrates, Mr. Lippincott stated that he was asking the Court for injunctive relief, and Defendants suggested that this request, if granted, would result in employees losing their jobs. (Mot. at 8 (quoting Dec. 19, 2016 Tr. at 172:25-176:6).) Even assuming Defendants' suggestion is true, it does not indicate bad faith on the part of Dunster. Indeed, it is not sanctionable for Dunster to exercise its legal rights in the face of Defendants' unlawful conduct—including the wholesale transfer of LoneStar's employees to LoneStar Management for the benefit of only Defendants—merely because Defendants have put LoneStar's employees at risk in the process. *Cf. Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."); *accord MI-LLC v. FPUSA, LLC*, No. SA-15-CV-406-DAE, 2015 WL 6738823, at *14 (W.D. Tex. Nov. 4, 2015).

Dunster is proceeding with its claims against Defendants in Travis County state court and intends to obtain a jury verdict against Defendants. The fact that Dunster elected to dismiss its sole federal claim after the Court denied a preliminary injunction sought under it and, instead, chose to pursue its state-law claims in state court does not support a request for sanctions. The Court should reject Defendants' attempt to obtain attorneys' fees from Dunster relating to causes of action that have not yet been adjudicated, but rather are the subject of ongoing litigation in state court.

## CONCLUSION

Defendants' motion for attorneys' fees and sanctions is procedurally improper and has no basis in the law or evidence. The Court should deny the motion for lack of jurisdiction and failure to follow Rule 11's procedural requirements. Should the Court reach the merits of the motion, the evidence demonstrates that Dunster's claims had merit and that Defendants did not "prevail" by surviving a request for a preliminary injunction. Dunster respectfully requests that the Court deny Defendants' motion and grant all additional relief to which Dunster is entitled.

Dated: April 4, 2017

        REESE GORDON MARKETOS LLP

*/s/ Pete Marketos*

Pete Marketos
  pete.marketos@rgmfirm.com
Leslie Chaggaris
  leslie.chaggaris@rgmfirm.com
Tyler Bexley
  tyler.bexley@rgmfirm.com
Nicholas S. Davis
  nick.davis@rgmfirm.com

750 N. Saint Paul Street, Ste. 610
Dallas, Texas 75201
Telephone:  (214) 382-9810
Facsimile:   (214) 501-0731

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 4, 2017, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorneys of record via the CM/ECF system and/or via electronic mail to:

Sam Johnson
Sara Wilder Clark
SCOTT DOUGLASS & McCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
sjohnson@scottdoug.com
sclark@scottdoug.com

Gregg R. Kronenberger
Kronenberger Law Firm, PLLC
11701 Bee Cave Road Suite 203
Austin, TX 78738
grcgg@gkronenberger.com

Mark Hawkins
Andrew York
Armbrust & Brown, PLLC
100 Congress Avenue, Suite 1300
Austin, TX 78701-2744
mhawkins@abaustin.com
ayork@abaustin.com

David D. DuBose
Greg Alan Waldrop
Terrill & Waldrop
810 West 10th Street
Austin, TX 78701
awaldrop@terrillwaldrop.com

Douglass Dodson Hearne, Jr.
Law Office of Douglass D. Hearne, Jr.
Barton Oaks Plaza, Bldg. V
901 S. Mopac, Ste. 200
Austin, TX 78746
dhearne@hearnelaw.com

      I further certify that on April 5, 2017, the foregoing document was sent via electronic mail and U.S. mail, to:

Brad Scott
5820 Steeplechase
Plano, TX 75093
bscottdal@yahoo.com

                                      */s/ Tyler J. Bexley*
                                      Tyler J. Bexley